**DELAWARE COUNTY MEMORIAL HOSPITAL, Appellant,**

**v.**

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

**No. 88–1665.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6), Jan. 23, 1989.

Decided Jan. 25, 1989.

W. Thomas Berriman, Mark C. Morrow, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for appellant.

Donna Z. Eden, Office of General Counsel, Dept. of Health & Human Services, Baltimore, Md., for appellee.

Before GIBBONS, Chief Judge, and SEITZ and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Delaware County Memorial Hospital appeals from a summary judgment in favor of the Secretary of Health and Human Services in its suit seeking to set aside the Secretary's determination that the Hospital would not be reimbursed on a cost basis for services to patients in the Hospital's rehabilitation unit during the fiscal years end-ing June 30, 1985 and June 30, 1986. Our review is plenary. We will affirm.

### I.

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the Medicare Act) provide federal funding for medical care for the aged and disabled. Part A of that Act provides for hospital insurance funded from Social Security taxes. 42 U.S.C. §§ 1395 c and i. Prior to 1983, Medicare providers were reimbursed for the reasonable cost of covered services. In 1983, Congress amended the Medicare Act establishing a prospective payment system in place of cost reimbursement under which Medicare providers are paid a predetermined amount for each discharge, which varies according to the diagnosis of the patient. Pub.L. 98–21 § 601(e); 42 U.S.C. § 1395ww(d). The 1983 amendment exempted from the prospective payment system those hospitals and hospital units which provide long-term care, including rehabilitation care. The pertinent section of the 1983 statute exempts from the prospective payment system "(ii) a rehabilitation hospital (as defined by the Secretary)," 42 U.S.C. § 1395ww(d)(1)(B), and "in accordance with regulations of the Secretary, a ... rehabilitation unit of the hospital which is a distinct part of the hospital (as defined by the Secretary)." *Id.*

On September 1, 1983, the Secretary issued a definition of the term "distinct part rehabilitation unit." 48 Fed.Reg. 39,752, 39,756. In order to qualify such a unit must:

> [h]ave treated, during its most recent 12–month cost reporting period, an inpatient population of which at least 75 percent required intensive rehabilitation for the treatment of one or more of [eight conditions].

42 C.F.R. § 405.471(c)(2)(ii) [redesignated in 1985 as 42 C.F.R. § 412.29(a)]. (The 75 percent rule).

On July 3, 1984, the Secretary issued a Notice of Proposed Rulemaking proposing changes in the regulations governing exclusion of rehabilitation units from the prospective prepayment system. 49 Fed.Reg.

27,422. Some comments received in response to this notice criticized the 75 percent rule on the ground that requiring a unit to have a 12-month cost reporting history was unfair to hospitals establishing new units. Responding to those comments the Secretary issued a regulation providing in pertinent part:

(e) Exclusion of new rehabilitation units and expansion of excluded rehabilitation units—(1) units. If a hospital has not previously sought exclusion for any rehabilitation unit, and has obtained approval for added bed capacity under State licensure and under its Medicare certification, it may identify the new beds as a new rehabilitation unit for the first full 12-month cost-reporting period during which the beds are used to furnish inpatient care. *A unit that is comprised of some beds that were previously licensed and certified, and some new beds, will be recognized as a new rehabilitation unit only if the majority of beds are new.* For the first cost reporting period in which a hospital seeks exclusion of a new rehabilitation unit, the hospital may provide a written certification that the inpatient population it intends the unit to serve meets the requirements of paragraph (c)(4)(iii)(A) [the 75 percent rule] of this section instead of showing that it has treated such a population during its most recent 12-month cost-reporting period.

49 Fed.Reg. 34,757 *et seq.* (Aug. 31, 1984); 42 C.F.R. § 405.471(e) [redesignated in 1985 as 42 C.F.R. § 412.30(a)] (the new beds rule) (emphasis added).

## II.

In 1980, the Hospital submitted to the Pennsylvania Department of Health an application for a certificate of need for a rehabilitation unit. A second hospital, Mercy Catholic Medical Center, also had such an application pending. The Pennsylvania Department of Health approved a joint certificate of need for both hospitals. Under the joint certificate of need the Hospital's new 20-bed unit was not to be built until the Mercy Catholic unit achieved an 85 percent occupancy rate for six months.

The certificate of need specified that the Hospital's 20-bed rehabilitation unit would be built in a new medical office building.

When the Mercy Catholic unit achieved an 85 percent occupancy rate in the spring of 1984, the Hospital requested a modification of the certificate of need, relinquishing its authority to build 20 new beds and requesting, instead, approval for the conversion of 20 existing beds for rehabilitation unit use. At the same time the Hospital applied to the Health Care Financing Administration, a component of the Department of Health and Human Services, for exclusion of its proposed rehabilitation unit from the prospective payment system. At that time the 75 percent rule was in place but the new beds rule had not been promulgated.

On August 29, 1984, two days before the new beds rule was promulgated, the Pennsylvania Department of Health approved the Hospital's application for conversion of 20 medical-surgical beds to rehabilitation use. The Hospital went forward with the conversion. The unit became operable three months before the end of the 1985 fiscal year, and thus could show only three months of rehabilitation case history in that year.

Through appropriate proceedings in the Department of Health and Human Services, the Hospital sought for its rehabilitation unit reimbursement for services on a cost basis rather than a prospective payment system basis for fiscal 1985 and fiscal 1986. Applying the 75 percent rule and the new beds rule, the Agency ruled that the Hospital did not qualify for exemption from the prospective payment system for those years. The Hospital then sought review by the Provider Reimbursement Review Board, which held it lacked jurisdiction. The Hospital then filed suit in the district court, which determined that the Provider Reimbursement Review Board had jurisdiction, and remanded. That Board, after a hearing, held that the Agency's ruling was correct. The Board's decision became the final decision of the Secretary on August 19, 1987, and the parties returned to the district court. On cross

motions for summary judgment, that court held that the Hospital failed to meet its burden of showing that the Secretary's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Judgment was entered in favor of the Secretary, and this appeal followed.

## III.

The Hospital concedes that there are no disputed fact issues. It contends that the summary judgment should be reversed, and judgment entered in its favor, because the Secretary's action was illegal in several respects.

### A.

### *The Validity of the Regulations*

The Hospital contends that both the 75 percent rule and the new beds rule are inconsistent with governing statutes. According to the Hospital, Congress in the 1983 amendments to the Medicare Act intended to exclude all rehabilitation units from the prospective payment system. Both the 75 percent rule and the new beds rule, it is urged, are inconsistent with that intention. The plain language of 42 U.S.C. § 1395ww(d)(1)(B), quoted in Part I above, requires a rejection of that contention. Congress expressly delegated to the Secretary the legislative rulemaking authority to define rehabilitation units. The Secretary adopted a definition, which the Hospital did not satisfy until July 1, 1986.

In a refinement of the Hospital's argument on inconsistency with the governing statute, it urges that even if the 75 percent and new beds rules are consistent with the Medicare Act, they are inconsistent with the National Health Planning and Resources Development Act, 42 U.S.C. § 300k-1 *et seq.* That health plan statute, the Hospital contends, encourages reduction in unused beds, and thus prohibits rules which erect entry barriers against conversion of old beds to new purposes. It is clear, however, that the 1983 Medicare Act amendments were aimed at a different and larger public purpose than the health planning statute, namely cost containment of a massive federal spending program. The regulations adopted by the Secretary respecting new rehabilitation units are entirely consistent with that purpose. They are designed to safeguard against attempts by hospitals to avoid the prospective payment system by the expedient of designating existing beds for long term care purposes. The regulations might have been drawn differently, but they certainly are consistent with the cost containment purposes of the 1983 Medicare Act amendments.

The Hospital also contends that in adopting the 75 percent and new beds regulations, the Secretary acted arbitrarily and capriciously by failing to consider all relevant factors. There is no merit to this contention. The 75 percent 12-month criteria ensured that only rehabilitation units with an operating history would be exempted from the prospective payment system. The new beds rule ensures that the new unit exemption from the operating history requirement will be applied only to Medicare providers who have demonstrated a need for rehabilitation beds above their existing capacity, thereby assuring that they are likely to operate at the 75 percent level from the outset. These rationales for the rules were carefully articulated by the Agency. *See* 48 Fed.Reg. 39,756 (Sept. 1, 1983), 49 Fed.Reg. 241 (Jan. 3, 1984); 49 Fed.Reg. 34,733, 34,751 (Aug. 31, 1984). The Secretary's actions in the rulemaking proceeding were entirely consistent with the Administrative Procedure Act.

### B.

### *Application of the Regulations*

The Hospital also contends that, assuming the 75 percent rule is valid, the operation of their rehabilitation unit during fiscal 1985 satisfied it, and that unit should therefore be exempt from the prospective payment system for fiscal 1986. This semantical argument focuses on the words in the rule "during its most recent 12-month cost reporting period." The Hospital explains that its 20 beds were empty for nine of the twelve months in fiscal 1985, and they

**14**

reached the 75 percent level for three months "during" that fiscal year. The Agency's consistent interpretation of the regulation is that it requires a 12–month history. That interpretation is consistent with the language adopted in the rule. This Court cannot reinterpret for the Agency its own rule when that interpretation is, as here, a rational interpretation. *Young v. Community Nutrition Institute,* 476 U.S. 974, 981, 106 S.Ct. 2360, 2365, 90 L.Ed.2d 959 (1986); *Butler County Memorial Hospital v. Heckler,* 780 F.2d 352 (3d Cir.1985).

### IV.

None of the Hospital's contentions on appeal suggest that the district court erred in granting summary judgment for the Secretary. That judgment will therefore be affirmed.